**MIAMISBURG MOTEL, d.b.a. Knights Inn of Dayton South, Appellee,**

**v.**

**HUNTINGTON NATIONAL BANK, Appellant.**

[Cite as *Miamisburg Motel v. Huntington Natl. Bank* (1993), 88 Ohio App.3d 117.]

Court of Appeals of Ohio,
Montgomery County.

No. 13747.

Decided June 2, 1993.

118

*James E. Cross* and *Canice J. Fogarty,* for appellee.

*Teri G. Rasmussen,* for appellant.

BROGAN, Judge.

Appellant, the Huntington National Bank ("Bank"), appeals from a judgment of the Montgomery County Court of Common Pleas denying its motion for relief from judgment filed pursuant to Civ.R. 60(B)(5).

The underlying facts and procedural history of the case are as follows. Plaintiff-appellee, the Miamisburg Motel, d.b.a. Knights Inn of South Dayton ("Miamisburg"), commenced this action in the Montgomery County Court of Common Pleas by filing a complaint against the Bank on June 6, 1991. The complaint sought judgment against the Bank on theories of conversion, unjust enrichment and breach of contract in "a minimum amount of $28,672.67 and for such other money damages as the plaintiff can establish at trial or hearing on this matter," together with punitive damages of not less than $50,000.

The complaint alleged that Miamisburg maintained two deposit accounts with the Bank prior to April 1989, with an aggregate balance of at least $28,672.67. The complaint further alleged that on approximately April 20, 1989, the Bank wrongfully took possession of these monies, thereby either committing conversion, becoming unjustly enriched, or breaching an implied contract with Miamisburg to administer Miamisburg's accounts in good faith and to handle money on deposit appropriately. The merits of this dispute are irrelevant for the purposes of this appeal.

The Bank was served with process by certified mail at its usual place of business in Dayton, Ohio pursuant to Civ.R. 4.2 on June 10, 1991. On or about June 27, 1991, counsel for the Bank telephoned Miamisburg's counsel to discuss several matters regarding the merits of the case and to request an extension of time to respond to the complaint. It seems clear from the record that the Bank's counsel left little doubt that the Bank intended to vigorously defend the lawsuit. Miamisburg's counsel indicated during the conversation that he had no objection to an extension of time but that the Bank should apply for any extension with the trial court and forward a copy of the extension entry to him. Subsequent to this telephone conversation, the Bank's counsel apparently did not seek an extension of time nor did he make any filing with the trial court.

Miamisburg's counsel claims that over the next couple of weeks he tried at least two times to contact Bank's counsel by telephone without success. On or about July 31, 1991, Miamisburg's counsel wrote a letter to the Bank's counsel regarding the status of the matter and inquiring about the Bank's intentions as to an extension of time. The letter mentioned nothing about seeking a default judgment and, in fact, Miamisburg's counsel stated: "If we are able to come to some understanding without a great deal of effort being spent in the courts, I am

all in favor of that type of resolution." Following receipt of the letter, the Bank's counsel again appears to have taken no immediate action.

On August 9, 1991, just nine days after sending the above correspondence, Miamisburg's counsel filed a motion for a default judgment against the Bank in the amount of $35,110.67, which was granted by the trial court on the same day. The motion failed to disclose to the trial court that the Bank was known to be represented by counsel or that there had been any discussion and correspondence between counsel concerning an extension of time to respond to the complaint. Neither the Bank nor its counsel received any notice of the impending default judgment pursuant to Civ.R. 55(A). Additionally, no hearing was held to determine the amount of damages.

On the same day default judgment was applied for and granted, Miamisburg's counsel mailed time-stamped copies of the motion and judgment entry to the Bank's counsel. The Bank's counsel states that because his copy of the judgment entry was not signed by the judge, he believed that the judgment entry was "merely a proposed judgment entry rather than [one] already having been entered." There is nothing in the record to indicate whether any inquiries were made to the trial court to confirm the Bank's counsel's belief.

On August 14, 1991, the Bank's counsel wrote a letter to plaintiff's counsel in response to the latter's July 31, 1991 letter and enclosed a copy of the Bank's memorandum in response to the plaintiff's default motion. Counsel included copies of the plaintiff's account records and denied the Bank had converted any of the plaintiff's funds. Miamisburg's counsel apparently never responded to the Bank's counsel to inform him that default judgment had already been entered.

The appearance docket of this case (No. 91–2485 below) reflects that the clerk of courts, pursuant to Civ.R. 58(B), mailed the standard postcard notice of the final appealable order to all parties, including the Bank, by regular mail on August 22, 1991. The Bank's counsel asserts that neither he nor "any responsible individual at the bank" ever received a copy of the notice. The record reflects that Miamisburg's counsel did receive a copy of the notice.

On August 26, 1991, the Bank formally filed its memorandum opposing the motion for default judgment, along with the tendered answer.[1] Apparently, the trial court ignored these pleadings since it had already entered a default judgment in the matter. The trial court took no steps to notify the Bank that default judgment had already been entered. We find nothing in the record to

---

1. The Bank points out that these pleadings were not filed earlier because the clerk of the trial court originally returned the tendered answer because it was not signed and refused to file the memorandum because it was stapled to the answer. The pleadings were apparently served on Miamisburg's counsel on August 15, 1991.

indicate that any further inquiry was made by the Bank's counsel into the disposition of the Bank's pleadings.

On or about August 14, 1992, just over one year after entry of default judgment, Miamisburg made a somewhat belated effort to satisfy the default judgment by attempting to garnish a number of the Bank's accounts at other financial institutions.[2]  While Miamisburg was unsuccessful in its attempt to garnish the Bank's accounts, its activity made the Bank aware of the default judgment.

Prompted to action, the Bank filed a motion for relief from judgment and to set aside the default judgment on September 1, 1992.  On October 9, 1992, the trial court overruled the Bank's motion for relief from judgment, ruling that the Bank had not made an "appearance" within the meaning of Civ.R. 55(A) triggering the requirement that notice must be served on the party against whom judgment by default is sought, and that the Bank's motion was untimely in any event.  It is from this judgment that the Bank appeals.

The Bank asserts the following four assignments of error: "(1) the trial court erred in refusing to vacate a default judgment entered without giving defendant seven days advance written notice on the grounds defendant had not appeared and was not entitled to notice when plaintiff knew and failed to disclose to the trial court that defendant was represented by counsel, that defendant vigorously disputed plaintiff's allegations, and that an informal extension to respond to plaintiff's complaint had been given to allow for the retrieval and review of relevant records; (2) the trial court erred in refusing to vacate a default judgment on grounds the application for relief was untimely when defendant bank filed a pleading contesting liability within days after it became aware the judgment had been entered approximately twelve months previously; (3) the trial court erred in failing to vacate a default judgment entered without any evidentiary hearing on a complaint seeking damages on theories of conversion, unjust enrichment and implied contract; and (4) the trial court erred in failing to vacate a default judgment entered on a complaint which fails to state a claim."

Due to their substantial similarity and in the interest of clarity, we will recast the Bank's assignments of error into one assignment of error, and will address all of the issues presented on this appeal in the following discussion of the Bank's sole assignment of error.

In its sole assignment of error, the Bank argues on several grounds that the trial court erred in refusing to vacate the default judgment.  "Civil Rule 60 provides the exclusive grounds which must be present and the procedure which

---

2.  The Bank informs us that it did not receive notice of a garnishment until one day after the scheduled time for the hearing.

must be followed in order for a court to vacate its own judgment." *McCue v. Buckeye Union Ins. Co.* (1979), 61 Ohio App.2d 101, 15 O.O.3d 103, 399 N.E.2d 127. See, also, Civ.R. 55(B). Rule 60(B) states as follows:

"(B) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative, from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud * * *, misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied * * * ; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. * * * "

The Ohio Supreme Court has held that to prevail on a motion brought under Rule 60(B) the movant must demonstrate (1) that the party has a meritorious defense or claim to present if relief is granted; (2) that the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) that the motion is made within a reasonable time, and where the grounds of relief are Civ.R. 60(B)(1), (2), or (3) not more than one year after the judgment, order or proceeding was entered or taken. *Argo Plastic Prod. Co. v. Cleveland* (1984), 15 Ohio St.3d 389, 391, 15 OBR 505, 506–507, 474 N.E.2d 328, 330; *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113. In this case, the Bank waited thirteen months after the entry of default judgment to file its Civ.R. 60(B) motion. A motion filed more than one year after entry of default judgment is untimely for relief under Civ.R. 60(B)(1), (2) or (3). The Bank does not claim to seek relief under subsection (4). Thus, Civ.R. 60(B)(5) provides the only avenue for relief from the default judgment available to the Bank.

As we noted earlier, the trial court found that the Bank was not entitled to relief from the default judgment because the Bank had not made an appearance triggering the notice requirements of Civ.R. 55(A) and, in any event, the Bank's motion for relief from judgment was not filed within a reasonable time from the entry of default judgment.

The Bank makes several arguments in support of its proposition that the trial court erred in failing to vacate the default judgment.

First, the Bank argues that the trial court should have vacated the default judgment on the grounds that the Bank made an appearance that triggered the notice requirements of Civ.R. 55(A). The Bank argues that it was entitled to notice of Miamisburg's application for a default judgment because the telephone

communication in which the Bank's counsel expressed to Miamisburg's counsel the Bank's intent to defend the suit and requested and received an extension of time to answer the complaint constituted an appearance. The Bank further argues that failure to provide such notice is grounds for relief from judgment under Civ.R. 60(B)(5).

Civ.R. 55(A) states as follows:

" * * * If the party against whom judgment by default is sought has appeared in the action, he * * * shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application."

An application for a default judgment is erroneously granted when a party against whom judgment by default is sought has "appeared in the action" and is not served with written notice of the application for judgment at least seven days prior to the hearing on such application. *Std. Oil Co. v. Noble* (1982), 4 Ohio App.3d 76, 4 OBR 127, 446 N.E.2d 816; *AMCA Internatl. Corp. v. Carlton* (1984), 10 Ohio St.3d 88, 10 OBR 417, 461 N.E.2d 1282.

We note that normally the issue of whether a party has appeared in an action for purposes of notification under Civ.R. 55(A) is one to be resolved on a timely appeal. *Std. Oil, supra.* See, also, *Gagliardi v. Flowers* (1984), 13 Ohio App.3d 238, 13 OBR 290, 468 N.E.2d 933 (a default judgment granted without proper notice must be vacated or reversed on appeal). However, in the typical case a filing of some sort is evidenced in the record so that the court of appeals may make the determination of whether or not an appearance has occurred. In the present case, no evidence of the communications between counsel existed in the formal record prior to the filing of the Bank's Civ.R. 60(B) motion, Miamisburg's opposing memorandum, and their accompanying affidavits. Thus, in a case such as this where a party alleges that it appeared in the action otherwise than by a filing and was thus entitled to notice of the application of default judgment, the proper avenue for relief from judgment is a timely Civ.R. 60(B)(5) motion.

The trial court determined as a matter of law that Civ.R. 55(A) requires an actual filing or notice to the trial court to constitute an appearance by the party against whom judgment by default is sought. The trial court seemed to indicate that only such a filing would trigger the notice requirements of the rule. Since the Bank made no such filing in trial court but only communicated its intent to defend the action and requested an extension of time in a telephone call to Miamisburg's counsel, the trial court determined that the Bank had not appeared in the action and was not entitled to notice of application for default judgment.

We have previously held that an exchange of letters between the parties in which the party against whom default judgment was ultimately granted clearly

indicated an intent to contest the underlying damages claim was sufficient to trigger the notification requirements of Civ.R. 55(A), even though no formal filing was made. *Justice v. Sears, Roebuck & Co.* (Sept. 4, 1984), Montgomery App. No. 8658, unreported, 1984 WL 3842. We based our conclusion in that case on *AMCA, supra.* In *AMCA,* the Ohio Supreme Court stated, 10 Ohio St.3d at 91, 10 OBR at 419–420, 461 N.E.2d at 1285–1286:

" * * * A notice requirement similar to the one in Civ.R. 55 has been described as follows: It is ' * * * a device intended to protect those parties who, *although delaying in a formal sense by failing to file [timely] pleadings * * *, have otherwise indicated to the moving party a clear purpose to defend the suit.'* * * * The purpose of the notice requirement will be emasculated if appellant-employer is not given sufficient time (*i.e.,* seven days) to show cause why it should be allowed to file a late answer and to show that it had a meritorious defense." (Emphasis added.) Quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe* (C.A.D.C.1970), 432 F.2d 689 (construing Fed.R.Civ.P. 55[b][2], which is practically identical to Civ.R. 55[A] ).

The *AMCA* court further relied on *Livermore* for the proposition that a defendant who has appeared in the action is entitled to service of an application for default judgment prior to its entry, and where service is required, a default judgment without service must be vacated or reversed on appeal.

The Ohio Supreme Court's holding and language in *AMCA* are informed by the underlying holding of the *Livermore* decision. The *Livermore* court held that the defendant had appeared in the action in that case, and was thus entitled to notice of the application for default judgment, where there were telephone and letter exchanges between the parties that constituted some effort to settle the underlying dispute, in spite of the fact that no formal filing was made with the trial court.

In the *AMCA* case, the Ohio Supreme Court further relied on *Hutton v. Fisher* (C.A.3, 1966), 359 F.2d 913, for the proposition that a telephone conversation between the parties was enough to make the party seeking a default judgment "sufficiently aware of [the other party's] intention to defend the suit." *AMCA,* 10 Ohio St.3d at 90, 10 OBR at 419, 461 N.E.2d at 1285. The *Hutton* court had held that a single telephone conversation in which plaintiff's counsel had acquiesced to defendant counsel's request for more time to prepare his defense was sufficient to bring the defendant within the notice provisions of the federal equivalent of Civ.R. 55(A). Fed.R.Civ.P. 55(b)(2).

We conclude on the basis of *AMCA* that the determination of whether a party has appeared in an action for the purposes of Civ.R. 55(A) notice requirements does not necessarily hinge on whether a formal filing was made with the court. Instead, we believe that *AMCA,* and those federal cases upon which it

relies, supports the proposition that a party appears in the action, and is thus entitled to notice of the application for default judgment, when that party clearly expresses to the opposing party an intention and purpose to defend the suit, regardless of whether a formal filing is made. See, also, *Lutomski v. Panther Valley Coin Exchange* (C.A.6, 1981), 653 F.2d 270; *Charlton L. Davis & Co. v. Fedder Data Ctr., Inc.* (C.A.5, 1977), 556 F.2d 308, 309; *Segars v. Hagerman* (N.D.Miss.1983), 99 F.R.D. 274; *Noland v. Williamson* (S.D.Ohio 1988), 94 B.R. 958; *Gulf Maintenance & Supply, Inc. v. Barnett Bank of Tallahassee* (Fla.App. 1989), 543 So.2d 813; *Simonson v. Sittner* (N.D.1957), 82 N.W.2d 78.

Miamisburg argues that *AMCA* is distinguishable from the present case because a filing was made with the court in that case. We are aware that a filing of sorts was made in *AMCA;* however, we believe that the facts of *AMCA* support the conclusion that a filing is *not the only manner* in which a party may make an appearance that triggers the notice requirements of Civ.R. 55(A).

In *AMCA,* the employer filed with the common pleas court a statutorily required notice of appeal of a decision of the Industrial Commission *two months prior* to the commencement of the action by the filing of the appellee-claimant's complaint.[3] We believe the pivotal fact in *AMCA* is that, after the complaint was filed, but before the employer filed its untimely answer, the employer's counsel contacted appellee-claimant's attorney by telephone and was assured that his firm would be given a reasonable opportunity and a reasonable amount of time to prepare and serve an answer. Only a few days after this conversation, and without any warning, appellee-claimant's counsel filed for and was granted a default judgment.

The Ohio Supreme Court determined that because of the telephone conversation "appellee-claimant's attorney was made sufficiently aware of appellant-employer's intention to defend the suit." *AMCA, supra,* 10 Ohio St.3d at 90, 10 OBR at 419, 461 N.E.2d at 1285. Later in the *AMCA* opinion, the Ohio Supreme Court held that Civ.R. 55(A) notice must be afforded to those who " 'have otherwise [than by a filing] indicated to the moving party a clear purpose to defend the suit.' " *Id.* at 91, 10 OBR at 420, 461 N.E.2d at 1285–1286. We believe that the Supreme Court clearly indicated in *AMCA* that the telephone call would have been sufficient *by itself* to constitute an appearance by the appellant-employer, thus triggering the notification requirements of Civ.R. 55(A), *even in the absence of a formal filing.*

---

**3.** Two months after the filing of the notice of appeal from the administrative order, the employer was relegated to the status of a defendant by the filing of the employee's complaint. No filing *at all* was made in response to the complaint prior to the employer's filing of an untimely answer after default judgment had been entered.

Our construction of Civ.R. 55(A) is further buttressed by *Dalminter, Inc. v. Jessie Edwards, Inc.* (D.C.Tex.1961), 27 F.R.D. 491, in which the court held that a single letter by a defendant corporation to plaintiff's counsel denying the allegations in plaintiff's complaint was sufficient to constitute an "appearance" within the meaning of Fed.R.Civ.P. 55(b)(2), even when no formal filing was made. The *Dalminter* court further held that it "became the duty of plaintiff's counsel, when seeking a judgment by default, to apprise the court of said letter and to give the notice contemplated under Rule 55(b)(2)." *Dalminter,* at 493.

■ We agree with the *Dalminter* court that a party, or his counsel, who is aware of a communication by the opposing party in which that party has expressed a clear purpose to defend the suit has a duty to inform the trial court of this fact when seeking a default judgment against that party, and has an obligation under Civ.R. 55(A) to inform that party that application for a default judgment had been made.

We believe that this construction of Civ.R. 55(A) most fully effectuates the Ohio Supreme Court's stated goal of relaxing restrictive rules which prevent the hearing of cases on their merits, and accomplishes the Supreme Court's desire that notice be given pursuant to Civ.R. 55(A) to all parties " 'who, although delaying in a formal sense by failing to file [timely] pleadings * * *, have otherwise indicated to the moving party a clear purpose to defend the suit.' " *AMCA, supra,* 10 Ohio St.3d at 91, 10 OBR at 420, 461 N.E.2d at 1285–1286. Moreover, such a construction of the rule fosters informal, honest communication between the parties to a lawsuit which may lead to the resolution of disputes without resort to the legal process.

■ While we believe the above result to be the proper one, it does not help the Bank in this case. It is within the sound discretion of the trial court to decide whether to grant a motion for relief from judgment, and in the absence of a clear showing of abuse of discretion, the decision of the trial court will not be disturbed on appeal. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122, 1124; *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 102, 68 O.O.2d 251, 253–254, 316 N.E.2d 469, 474. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Hopkins v. Quality Chevrolet, Inc.* (1992), 79 Ohio App.3d 578, 581, 607 N.E.2d 914, 916. After thorough review of the record, we are not persuaded that the trial court abused its discretion.

While we disagree as a matter of law with the trial court's finding that the Bank had not made an "appearance" within the meaning of Civ.R. 55(A), the trial court's error in this regard was merely an error of law and did not rise to the level of an abuse of discretion. Moreover, the trial court found that even if the

Bank had made an "appearance" within the meaning of Civ.R. 55(A), its Civ.R. 60(B)(5) motion for relief from judgment was untimely.

Thus, the Bank's contention that it should be granted relief from default judgment on the basis that it appeared in the action for Civ.R. 58(A) notification requirements depends on the resolution of the issue of whether the trial court abused its discretion in finding that the Bank's motion for Civ.R. 60(B)(5) relief was untimely.

The Bank contends that its motion for relief from judgment was timely because it was filed within days after it realized that the default judgment had been entered almost thirteen months earlier. That the Bank waited over thirteen months after entry of default judgment to file its Civ.R. (60)(B) motion, in and of itself, does not necessarily show that its motion was not filed within a reasonable time. We recognize that the Bank's counsel filed its motion promptly after becoming aware of the default judgment. However, "[t]he determination as to what constitutes a 'reasonable time' is for the trial court in the exercise of its sound discretion." *In re Watson* (1983), 13 Ohio App.3d 344, 346–347, 13 OBR 424, 426, 469 N.E.2d 876, 879. In this case, we find ample grounds upon which the trial court could have determined that the Bank's delay in moving for relief from judgment was unreasonable and inexcusable.

First, the Bank's counsel offers no valid excuse as to why he did not request a formal extension of time from the trial court after his initial communication with Miamisburg's counsel. Second, after receiving the letter and several phone messages from Miamisburg's counsel the Bank's counsel still did not either formally request an extension of time or move for leave to file an untimely answer. Third, the Bank's counsel received time-stamped copies of Miamisburg's motion for default judgment immediately after it was filed with the court. Inexplicably, the Bank did nothing to follow up with the trial court or Miamisburg's counsel to see whether the motion had been granted. Fourth, the docket and journal entries reflect that the standard postcard notice of a final appealable order was sent by the clerk of courts to the Bank at the same address at which the Bank received the initial summons and complaint.

Finally, the Bank filed a memorandum opposing the motion for default judgment after it received the time-stamped copies of Miamisburg's motion and judgment entry. The Bank's counsel never inquired as to the status of its memorandum after it was filed. Under such circumstances we cannot find that the trial court abused its discretion in denying the postjudgment relief on the basis of the Bank's untimeliness.

The Bank presents us with three other grounds upon which the trial court should have vacated the default judgment in addition to improper notice of the motion for default judgment.

■ First, the Bank argues that the trial court should have construed its memorandum opposing Miamisburg's motion for default judgment, filed immediately after default judgment was entered, as a proper and timely Civ.R. 60(B) motion for relief from judgment. We cannot agree.

We conclude that the trial courts, already overburdened, cannot be responsible for reviewing every motion in order to determine whether the contents of the motion should be interpreted and applied in a different, and perhaps more appropriate, manner than the form or caption of the motion indicates. Such an activity would engage the trial courts in the impossible task of trying to second-guess the strategy and intentions of the parties at any point in the litigation process. Moreover, the memorandum filed by the Bank was clearly not a motion for relief from judgment. As one court has stated, "[t]he simple exercise of attaching an affidavit to every misguided motion at the trial level could conceivably elevate any motion to a Civ.R. 60(B) [motion] * * *." *Consol. Rail Corp. v. Forest Cartage Co.* (1990), 68 Ohio App.3d 333, 340, 588 N.E.2d 263, 268. The Bank's motion merely opposed a motion for default judgment already entered by the trial court; it did not seek a vacation of judgment based on the criteria of Civ.R. 60(B) and *GTE, supra,* and thus could not be considered as a proper and timely motion for relief from judgment.

We note, however, that the trial court in this case could have notified the Bank of the entry of default judgment upon realizing from the face of the memorandum and the tendered answer that the Bank was attempting to oppose a motion for a default judgment which was, in fact, already entered. The Bank's memorandum alerted the court that the Bank was ready, willing and able to defend the lawsuit on the merits, and that the Bank had had no notice of the application for default judgment in the first instance. The trial court apparently believed that the Civ.R. 58 notice would trigger any postjudgment action deemed appropriate by the Bank.

■ The Bank's second argument is that the trial court should have vacated the default judgment because it failed to hold a hearing on the amount of default damages, and its third argument is that the trial court should have vacated the judgment because it was based on a complaint which failed to state a claim. Regardless of their relative merits, both of these arguments should have been raised in a timely appeal since they merely allege error on the part of the trial court. A Civ.R. 60(B)(5) motion for relief from judgment may not be used as a substitute for a direct appeal from the judgment challenged, *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 245, 18 O.O.3d 442, 443–444, 416 N.E.2d 605, 607, nor may it be used as a substitute for, or in place of, any of the other more specific provisions of Rule 60(B). *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 5 OBR 120, 448 N.E.2d 1365.

The Bank's counsel claims that the Bank could not have perfected a timely appeal because the Civ.R. 58(B) standard postcard notice of final appealable order was never received by the Bank, and thus the Bank never had notice that a final order had been entered. Under more compelling circumstances we might entertain the Bank's argument on due process grounds; however, the Bank made no colorable showing that service was never issued by the clerk. See *DeFini v. Broadview Hts.* (1991), 76 Ohio App.3d 209, 601 N.E.2d 199 (affidavit of former clerk employee demonstrated that official records of clerk's office indicated that no mail service had been issued on ruling despite notation in case docket that service was issued). Any party's failure to receive such notice after it is served shall not be used to challenge the validity of the judgment or as a defense for failure to file a timely appeal. Civ.R. 58(B). Since the Bank cannot demonstrate that service of the notice of the final appealable order was never issued by the clerk, the time for appeal from the default judgment in this case expired according to App.R. 4(A).

Accordingly, we reluctantly overrule the Bank's assignments of error. The judgment of the Montgomery County Court of Common Pleas will be affirmed.

*Judgment affirmed.*

GRADY, P.J., and FREDERICK N. YOUNG, J., concur separately.

GRADY, Presiding Judge, concurring.

I agree with Judge Brogan that the trial court did not err when it denied the Civ.R. 60(B) motion of defendant-appellant Huntington National Bank. The motion to vacate was not timely made. However, I do not agree that the acts of the Bank or of its counsel could constitute a form of appearance requiring service on the Bank of plaintiff Miamisburg Motel's motion for default judgment.

Civ.R. 5(A) controls service: "[E]very written motion other than one which may be heard *ex parte* * * * shall be served upon each of the parties. No service need be made on parties in default for failure to appear." This rule applies to motions for default judgment. Defendants who are served with a summons and complaint but who fail to enter an appearance in the action are not entitled to notice of default proceedings. *Sexton v. Sugar Creek Packing Co.* (1974), 37 Ohio St.2d 58, 66 O.O.2d 161, 307 N.E.2d 541.

A party has appeared for purposes of Civ.R. 55(A) if the party has responded to the assertion of a claim against it by submitting itself to the jurisdiction of the court in which the claim has been filed. This submission may be in person or through the party's legal representative. The form of the appearance is not

limited by the rule, but the form employed must in some way create power in the court to exercise jurisdiction over the party.

An appearance involves some presentation to the court. The most common form of appearance is a pleading responsive to the merits of the claim asserted. However, even pleadings that do not respond to the merits of the claim may suffice. Thus, a motion for an extension of time within which to respond has been held to be an appearance for purposes of Civ.R. 55(A). *Hardware & Supply Co. v. Davidson* (1985), 23 Ohio App.3d 145, 23 OBR 371, 492 N.E.2d 168. Copies of letters written to plaintiff's counsel that are filed with the clerk have been held sufficient to constitute an appearance. *Spratt v. Fredrickson* (Apr. 26, 1979), Cuyahoga App. No. 38579, unreported. Even a motion contesting service may constitute an appearance as a measure to "otherwise defend." 1970 Staff Note to Civ.R. 55(A).

The foregoing methods of appearance have one element in common: each is a presentation to the court resisting the claim or the application of the law to the party making it. The form of an appearance that Judge Brogan would support, discussions or correspondence between counsel, is not. For that reason, I believe that it is insufficient to constitute an appearance for purposes of Civ.R. 55(A). I also believe that it would, if allowed as appearance, produce numerous Civ.R. 60(B) motions alleging contacts of that kind that came to no fruition, which would be difficult to resolve.

Finally, I agree with Judge Young's observation that in those cases in which communications between counsel have been accepted as sufficient grounds to vacate a default judgment under Civ.R. 60(B) it is the misleading character of the acts of a party or its counsel that has resulted in an order to vacate, not a finding of a genuine appearance.

For the foregoing reasons, I would affirm.

FREDERICK N. YOUNG, Judge, concurring.

I write not out of disagreement with the scholarly opinion of Judge Brogan, but rather to express my concern over the apparent extension of the requirement of an appearance to include mere telephone conversations between counsel. I find this troublesome.

In *AMCA* the Ohio Supreme Court, in answering the question whether the appellant there had "appeared in this action," actually pointed first to the filing of a notice of appeal by the appellant, an employer, from the order of the Industrial Commission and stated that by so doing "it was the appellant-employer who initiated this cause by submitting itself to the jurisdiction of the Court of Common Pleas of Stark County." *Id.*, 10 Ohio St.3d at 90, 10 OBR at 419, 461

N.E.2d at 1285. The court then stated: "*In addition*, the record indicates that appellant-employer had also had a telephone conversation in which appellee-claimant's attorney was made sufficiently aware of appellant-employer's intention to defend the suit." (Emphasis added.) *Id.*

It is at least questionable whether the Supreme Court would have found an appearance by the appellant in that case if there had been no filing in court and only the single telephone conversation had occurred.

The Ohio Supreme Court in *AMCA* relied solely on federal cases for its expansion of the satisfaction of the appearance requirement to include verbal and perhaps written communications between counsel. It first cited *Hutton v. Fisher* (C.A.3, 1966), 359 F.2d 913. In that case a senior counsel in the firm representing the party who obtained the default judgment had actually entered into a verbal agreement with counsel for the other party to give him more time to file an answer. A junior counsel in that firm had not been informed of that fact and proceeded to obtain the default judgment. The court there stated that the aggrieved party against whom default judgment was obtained should not be penalized for lack of communication within the other party's law firm.

In the earlier case of *Bass v. Hoagland* (C.A.5, 1949), 172 F.2d 205, a majority of the court found that plaintiff's counsel had fraudulently withheld notice to defendant of the filing of a motion for judgment by default. Defendant had already appeared in the case by filing an answer. The court found a lack of due process in the situation. The dissenting opinion there objected strongly and stated that it was "just another instance of a hard case making bad law." *Id.* at 211.

In the case of *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe* (C.A.D.C.1970), 432 F.2d 689, a letter was introduced into evidence which was from the appellee's counsel to his client informing the client about telephone conversations he had had with counsel for appellant, against whom default judgment was about to be obtained, in which he informed his client that he (the attorney) had deliberately avoided telling appellant's counsel about his default in failing to file a timely answer at that time because he did not want to spur the other side into action.

It seems to me that what we have in this somewhat sparse line of authority can be characterized not so much as cases of satisfaction of the appearance requirement but rather as cases of unprofessional conduct by one of the counsel leading to an injustice which the courts with their broad power have been determined to correct.

It would appear that we are now holding that the counsel for plaintiff is not only an officer of the court but also an officer of the clerk of courts. I am not

certain that we should go so far, and if we are extending the rule in such fashion should it not be a matter of revising our Civil Rules to reflect this legal position so as to inform Ohio counsel what the responsibilities of plaintiff's counsel are when a default is looming? It would not be unwieldy to require, by rule, that counsel for the plaintiff file with the court along with the motion for default judgment the name and address of opposing counsel if in fact the opposing party does have counsel and has expressed in one way or another the determination to defend against the suit. In the alternative, the motion could include a certification by counsel for plaintiff that he has mailed a copy of his motion and proposed default entry to opposing counsel. The court would then have a definite date on which to base the date for the hearing on the motion no earlier than seven days thereafter.

If no such rule is adopted, I believe we should limit the doctrine of appearance by communication between counsel without an actual filing in court to cases where the aggrieved party, or its counsel, have been misled, unfairly or by accident, into a default situation by the counsel for the plaintiff.